The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner John Hedrick. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. Plaintiff last worked for defendant on 26 April 1996. Defendant-employer terminated plaintiff's employment on 30 April 1996. Plaintiff remained unemployed until 24 June 1996, except for the following positions: (a) on 16 June 1996, plaintiff worked one day at a Sears store, through Olsten Staffing Services, for which she was paid $39.00 (6 hours @ $6.50 per hour), (b) 12-19 June 1996, at Bedford Fair Industries, for which she was paid $207.50 (41.5 hours @ $5.00 per hour), and (c) on 22 June 1996, plaintiff worked three hours at C.N. Davis Nursing Home, through Olsten Staffing Services, for which she was paid $15.75 (3 hours @ 5.25 per hour).
2. Plaintiff has been receiving temporary total disability compensation since 24 June 1996. Plaintiff was paid temporary total disability compensation for three weeks for the period from 2 August 1996 through 22 August 1996 which she should not have received because of other earnings during that time, such that there was an overpayment of $547.23.
3. On 24 February 1997, defendants filed a Form 24, Application to Terminate Payment of Compensation. Plaintiff filed her response to defendants' application on 13 March 1997.
4. A set of plaintiff's medical records, marked as Stipulated Exhibit Number Two, is admitted into evidence.
5. Letters from defendant-insurer to Drs. Esposito, Chipley and White and their responses thereto, collectively marked as Stipulated Exhibit Number Three, are admitted into evidence.
6. A surveillance report, marked as Stipulated Exhibit Number Four, is admitted into evidence.
7. Plaintiff's employment records from Olsten Staffing Services, marked as Stipulated Exhibit Number Five, are admitted into evidence.
8. A videotape, marked as Stipulated Exhibit Number Six, is admitted into evidence.
9. Four pages of plaintiff's medical records from Dr. Chipley, received by the Industrial Commission on 8 August 1997, are admitted into evidence.
10. The issues to be determined are:
 A. What amount of compensation is plaintiff entitled to receive for the period from 30 April 1996 to 24 June 1996?
 B. Whether defendants should pay the outstanding bill from Delaney Radiology for the 9 May 1996 x-ray of plaintiff's elbow?
 C. Should defendants' Application to Terminate Payment of Compensation be allowed?
 D. What amount of permanent partial disability compensation, if any, is plaintiff entitled to receive?
 ***********
The Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff was born on 13 October 1963, and is right-handed. At the time of the hearing in this matter, plaintiff was thirty-six years old and a high school graduate.
2. Defendant-employer is in the business of inspecting yarns manufactured at the Dupont plaint in Brunswick County.
3. On 8 March 1996, plaintiff began employment with the defendant-employer as a yarn pack inspector.
4. On 20 April 1996, at approximately 1:30 p.m., the plaintiff reached down with her right arm through a doff receiver in an attempt to push a gauge so that tubes of yarn would come up for inspection. When the tube came up, plaintiff's arm was severely crushed in the receiver, for what seemed to her about five minutes, until she could reach around with her left arm and release the air pressure.
5. Shortly after the accident, plaintiff told Martha Reeves, her supervisor what had happened, and that her arm was in a lot of pain. Ms. Reeves placed a telephone call in an effort to find out what they should do about the accident, and made some notes about what had happened. After a period of time, no one having called Ms. Reeves back, plaintiff went back to her job and attempted to continue to work, using her left arm.
6. When her shift ended at 4:00 p.m., plaintiff told Ms. Reeves that she was going to the emergency room because her arm was hurting so bad. Up until that time, Ms. Reeves had not offered plaintiff any medical treatment and had not asked her if she wanted to see a doctor. Ms. Reeves asked the plaintiff to let her know the next day how she was doing.
7. Plaintiff sought treatment at New Hanover Regional Medical Center, where the emergency room physician diagnosed a mild crush injury to her right arm. She was instructed to apply ice, take Ibuprofen and Co-Gesic for pain, and limit the use of her right arm until pain-free. She was instructed to follow up with an orthopaedist if problems persisted.
8. On 21 April, plaintiff reported to work and gave a copy of the hospital note to Ms. Reeves. Ms. Reeves said that if plaintiff were a regular employee she could take three or four days off, but since she was still on probation, she would get fired if she missed work because of the injury. Plaintiff therefore continued to work using her left arm instead of her right as much as possible.
9. On 21 or 22 April 1996, plaintiff attended a meeting concerning the circumstances of the accident. No one inquired of plaintiff whether she felt she needed more medical treatment.
10. The employer's operations manager, Hilda Bennett, concluded the accident was caused by plaintiff violating a safety rule when she placed her arm through the receiver with the air line still connected. The investigation report prepared by the committee notes that plaintiff had been in training for three weeks on the floor but had not gone through the classroom training. The Full Commission finds that plaintiff's violation of a safety rule was not one knowingly or willfully done.
11. On 25 or 26 April 1996 plaintiff was observed pushing the doff receiver without first turning off the air line. A co-worker immediately pointed out her mistake, but the mistake was reported to Ms. Bennett.
12. On 30 April 1996, the employer terminated plaintiff's employment because of these two safety violations. Plaintiff was not terminated due to any intentional misconduct on her part.
13. At the time of her dismissal, plaintiff's right arm was still aching and she had some numbness in her fingers. Several days later she telephoned the employer's safety director and asked him to arrange for her to see a doctor, but he stated that he would not.
14. On 8 May 1996, plaintiff consulted with Dr. Michael Graybar, a chiropractor. She reported having burning pain in her arm as a result of the injury, and numbness in her fingers. He referred her to Delaney Radiology for an x-ray to determine if there were any fractures in the area of her right elbow. That x-ray, taken on 9 May, was negative.
15. Plaintiff subsequently telephoned the Commission and on 16 May mailed the Commission and the defendant-employer a completed Form 18 Claim.
16. Following a telephone interview with plaintiff on 14 May 1996, the defendant-carrier wrote plaintiff on 31 May 1996 that the defendants would not pay for her emergency room treatment, for the reason that the employer had offered her medical treatment which she refused. The defendants have subsequently paid for that emergency room treatment.
17. On 22 May 1996, plaintiff sought treatment from volunteer physicians at the Tileston Community Health Clinic. There she met Dr. Kenneth White after the first physician who saw her found a positive Tinnel's sign in her right wrist. Dr. White concluded that she was at risk for developing reflex sympathetic dystrophy (RSD), and arranged for her to continue to see him at his private office. At that time, plaintiff had been out of work since 30 April 1996. Plaintiff, at that time unrepresented by counsel, did not ask Dr. White to assess her ability to work, nor did the defendant-carrier's adjustor who had interviewed her a week earlier.
18. On 11 June 1996, plaintiff was evaluated by Dr. White at Wilmington Plastic Surgery. He prescribed a course of therapy with Kathy Ormsby of the Wilmington Hand Rehabilitation Center aimed at reducing the symptoms of RSD which she was exhibiting. Plaintiff began to see Ms. Ormsby two days later, on 13 June 1996.
19. On 20 June 1996, plaintiff was evaluated by orthopaedist Dr. David Esposito at the request of the defendants. He diagnosed medial epicondylitis and prescribed ice massage, strengthening exercises, and anti-inflammatory medications. Plaintiff asked him to fill out a functional capacity questionnaire which she had obtained from Bedford Fair, where she had been working for one week. Dr. Esposito indicated that she should not lift any more than five pounds with her right arm. Plaintiff resigned her position as a result of this work restriction.
20. In August, 1996, the defendants commenced payment of temporary total disability benefits as of 24 June 1996, based on Dr. Esposito's report. The parties entered into a Form 21 Agreement for Compensation, which was approved by the Commission on 19 August, 1996.
21. Plaintiff returned several times for treatment with the hand therapist in June, July, and August, 1996. On 5 August 1996, Dr. White placed plaintiff on work restrictions of no lifting over five pounds with the right hand and no repetitive right hand use. Plaintiff subsequently obtained a job as a welder at Container Products, but after ten days had to give up the job on 23 August after being urged to do so by Ms. Ormsby, due to her increased symptoms.
22. On 20 September 1996, plaintiff commenced a course of physical therapy at Cape Fear Memorial Hospital's outpatient rehabilitation center. She attended regularly and performed prescribed exercises until 17 October 1996, when she returned to Dr. White. On 18 October 1996, she was evaluated by Dr. Esposito, who recommended a course of pain management.
23. On 14 November 1996, plaintiff entered treatment with Dr Paul Chipley at the Coastal Carolina Center for Pain Management. Following neurometer testing performed on 26 November, he diagnosed severe hypoesthesia and sympathetically mediated pain (SMP), and prescribed a series of three bier block injections to prevent RSD from developing further, which were administered on 6, 14 and 29 January 1997. On 29 January 1997, Dr. Chipley prescribed a six to nine month trial of a TENS unit, and noted that she should return in one month for a final evaluation.
24. In January, 1997, the defendant-carrier contracted with a private investigation firm to conduct surveillance on the plaintiff. On 9 and 23 January 1997, plaintiff was videotaped performing various weightlifting and aerobic exercises. On 24 February 1997, the defendant-carrier mailed a copy of the videotape and the investigator's report to Dr. Esposito and Dr. Chipley. Dr. Chipley viewed the videotape immediately upon receipt and wrote back to defendant-carrier's adjustor just two days later, on 26 February stating that plaintiff does not have any permanent partial disability in her right arm.
25. Also on 24 February 1997, the defendants filed a Form 24 Application to Terminate Payment of Compensation, alleging that plaintiff "is extending her disability by not following through with prescribed medical care." Plaintiff stated, in her response to the Form 24 Application, that her arm hurts whether or not she works out, and that she had not been able to find any suitable employment.
26. Prior to the accident of 20 April 1996, plaintiff regularly participated in weight training and aerobic exercise. In the past she had attended welding classes at Cape Fear Community College. She discussed her exercise activities with the defendant carrier's adjustor during their telephone interview on 14 May 1996. For several months after the accident, she stopped doing exercises because of the pain she experienced upon applying any pressure to her arm. She discussed her exercise activities with Dr. White and Kathy Ormsby, as well as Dr. Chipley. In January, 1997, she decided to resume doing the exercises in an effort to build her strength back up.
27. On 10 March 1997, plaintiff returned to see Dr. Chipley and attempted to talk to him about the circumstances of the videotape. Dr. Chipley did not make any office record of that encounter. Records indicate that the final evaluation contemplated by Dr. Chipley on 29 January 1997, was never performed. Dr. Chipley's opinion that the plaintiff does not have any permanent partial disability as a result of her injury is not persuasive to the Full Commission.
28. On 18 March 1997, some five months after he last saw the plaintiff, Dr. Esposito opined that plaintiff does not have any permanent partial disability. However, Dr. Esposito did not confer with the plaintiff prior to forming his opinion, the Full Commission finds that his opinion is not persuasive.
29. Dr. White saw plaintiff on 3 April 1997, and they discussed her exercise and weightlifting activities. He subsequently performed a final evaluation, based in part on diminished grip strength of the right hand as demonstrated in tests performed by Ms. Ormsby on 4 April. He concluded that plaintiff has ten percent partial permanent disability to the right arm secondary to pain and weakness. Dr. White testified that he was unable to form an opinion as to plaintiff's work capabilities since an exhaustive work capacities evaluation had not been performed.
30. On 4 April 1997, Ms. Ormsby instructed plaintiff on how to make better use of the TENS unit to relieve her pain and discomfort. She also recommended a daily regimen of ice and heat, stretching exercises, and massage, and encouraged her to continue to use the forearm compression cuff and soft elbow cuff. Dr. White concluded in his final evaluation that plaintiff would need to continue using the TENS unit and the other measures recommended by the therapist.
31. The defendant-employer has never offered to rehire the plaintiff, either in the position she held at the time of the accident or a different position. The defendants have not offered plaintiff any vocational rehabilitation services to assist her in finding suitable employment.
32. Plaintiff has made reasonable efforts to secure suitable employment in that she has held a number of temporary short-term positions and has attempted to return to regular full-time work at least twice, but her efforts to secure suitable employment were unsuccessful due to flare-ups of symptoms in her arm. Dr. White described her as having a good attitude and always being very interested in returning to work.
33. The numerous indications in medical records regarding her cooperative attitude and her desire to resume gainful employment, the Full Commission finds that plaintiff's complaints of continuing pain and discomfort in her right arm are credible.
34. While Dr. White testified that plaintiff's aerobic exercise and weight training activities were overdoing it, he also testified that he had urged plaintiff to use her arm as much as possible in a normal fashion.
35. Based on the plaintiff's testimony, the emergency room records of her 20 April 1996 visit, Dr. Graybar's report of his evaluation on 8 May 1996, and the subsequent findings and conclusions of Dr. white, the Full Commission finds that plaintiff was temporarily totally disabled from work from 30 April 1996 to 20 June 1996. Specifically, plaintiff's symptoms continued unabated, and may even have worsened during that time period.
36. As a result of her compensable injury on 20 April 1996, plaintiff is entitled to temporary total disability compensation to continue until she obtains suitable employment or further order of this Commission.
 ************
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff is temporarily totally disabled as a result of the compensable injury sustained on 20 April 1996. Defendant shall pay plaintiff total temporary disability benefits from 20 April 1996 in the amount of $182.41 per week and continue until further order of this Commission. N.C. Gen. Stat. Sec. 97-29.
2. The defendants have not produced sufficient evidence to rebut the continuing presumption of disability by plaintiff as a result of the Form 21 Agreement herein approved by the Commission. The defendant's Form 24 Application to Terminate Payment of Compensation is disapproved. N.C. Gen. Stat. § 97-18.1.
3. Plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury to the extent that these expenses tend or tended to effect a cure, give relief or lessen the period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation from 30 April 1996 and continuing until further order of this Commission.
2. The defendant's Form 24 Application to Terminate Payment of Compensation is disapproved. Defendants shall continue to pay plaintiff temporary total disability compensation until she obtains suitable employment or until the Commission orders that said compensation may be suspended or terminated.
3. Plaintiff shall comply in good faith with all medical and rehabilitative treatments and services provided by defendants, including vocational rehabilitation services.
4. Defendants shall pay all medical expenses incurred by plaintiff as a result of her compensable injury on 20 April 1996, including expenses related to the x-ray performed on 9 May 1996 and the TENS unit provided by Rehabilicare through Dr. Chipley, when bills for the same shall have been submitted through defendant-carrier to the Industrial Commission and approved by the Industrial Commission.
5. A reasonable attorney fee of twenty-five (25) percent of the compensation due under the above award is hereby approved for plaintiff's counsel, which shall be deducted from the same award and forwarded directly thereto. For the balance of this fee, defendants shall forward every fourth compensation check payable hereunder to plaintiff's counsel.
6. Defendants are entitled to receive a credit for any income received by plaintiff through her return to work efforts.
7. Defendants shall pay the costs.
This the 18th day of March 1998.
 S/ _______________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ________________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
S/ ________________ DIANNE C. SELLERS COMMISSIONER